(No. 23740.—

The People of the State of Illinois, Defendant in Error, *vs.* Bruno Dory, Plaintiff in Error.

*Opinion filed December 10, 1936.*

Frank A. McDonnell, (Elwyn E. Long, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error seeks review of a judgment of the criminal court of Cook county finding him guilty of robbery while armed with a gun. The case was tried before the court on waiver of a jury.

Plaintiff in error urges two grounds for reversal: (1) That the proof of identification was not sufficient to support conviction; and (2) that the court erred in calling *sua sponte* Ray Albin as a witness for the purpose of impeaching plaintiff in error's testimony. It is sufficient to say of this second ground that no objection was urged in the trial court either to calling Albin as a witness or to his examination, and that contention will need no further consideration here.

The proof of the robbery was given by the complaining witness, Henry Shulken. He testified that on November 1, 1935, at about 6:45 P. M., as he was entering his automobile, he was accosted by a man standing near the right front fender of his car, who said, "It's a stick-up," and exhibited a gun. As the witness got into the car this man followed him into the front seat and said, "Keep quiet, look forward. * * * Leave my pal in." The witness looked out of the window of the left front door and saw the plaintiff in error, Dory, standing close to the car. A street light was shining within twenty feet of the car and he saw him plainly. Dory got in on the left side of the car, pushing witness over, and the other man was told by Dory to get into the back seat, which he did. Dory seated himself behind the wheel, pulled the witness' hat over his eyes and demanded his money. Shulken, the complaining witness, testified that he gave the

robbers eight dollars in bills and some small change; that after driving a while they backed the car into an alley, and the man in the back seat said, "Where is your cash sheet and your bag?" and after looking at the bag said, "Come on, you have $80 or $60;" that they thereafter searched him and took from the rear pocket of his trousers a check for $16, one for $16.60, and about $40 in cash, the receipts of his collections as agent for the Metropolitan Life Insurance Company. He testified that they then hit him with their fists and forced him to walk down the alley ahead of them, and after walking some distance he realized he was not being followed and shouted for help. On November 12 following, Shulken identified Dory at a show-up in the police station. Dory was in a line with nine other men. Shulken testified that he later had a conversation with Dory in the presence of some officers; that one of the officers asked Dory if he knew the witness, and he replied, "Yes, he is an insurance man;" that Shulken later saw Dory and asked him to·return the checks, stating that he would have to make them good, and that Dory asked him to give him a break. This conversation was corroborated by the testimony of a police officer, who, however, stated that Dory declared in his conversation with Shulken that he did not know anything about the checks.

Dory testified that he did not know the complaining witness; that he had seen him a week before the latter had identified him at the police station; that he saw him at Joe Finley's barber shop, and that this was about a week after the robbery. He testified that the complaining witness, in a conversation with Finley and others, discussed the robbery, and that although Dory was in plain sight of him, working at one of the barber chairs, Shulken said nothing about recognizing him. He denied having had anything to do with the robbery but declared he was working that day and did not get home until about 6:30. In rebuttal, Finley testified that Shulken was not in the barber shop at any

time when Dory was there working for him. In this he is corroborated by the witness Ray Albin.

In support of the contention that the proof of identification was insufficient, counsel for plaintiff in error argue that the robbery occurred in a dark place; that the positions of the street lights were such that they were at the back of the robber who appeared at the left front door of the car, and that these facts, together with the complaining witness' inability to describe or identify the police officers who took him to the station, makes his identification doubtful. Counsel cite *People* v. *Gold,* 361 Ill. 23, wherein it was said that where conviction rests upon an identification which is doubtful, vague or uncertain, and which does not produce an abiding conviction of guilt, a verdict of guilty will be reversed. The facts in that case are in nowise similar to those in the instant case. Here the complaining witness positively identified defendant Dory as the man who appeared at the left front door of his car, with his face within a foot or two of him; that it was light enough where the car was standing to read a newspaper, and that while the street light was back of Dory he could see him quite plainly. There is no question concerning the competency of the identifying testimony, and its weight was for the trial court in connection with other circumstances in evidence. *People* v. *Maciejewski,* 294 Ill. 390; *People* v. *Jennings,* 252 id. 534.

The trial court did not err in finding plaintiff in error guilty and in sentencing him accordingly, and the judgment is affirmed.

*Judgment affirmed.*